Our last case for argument, United States v. Nicoson, Mr. Gaziano. May it please the Court, Paul Gaziano of the Federal Defender Program in Rockford, Illinois, on behalf of Mr. Jason Nicoson. This appeal addresses the application by the District Court of a cross-reference which tremendously affected Mr. Nicoson's sentence. At the time of his plea of guilty to two counts of transportation for distribution of child pornography, the pre-sentence investigation suggested that he be subjected to 2G 2.2 of the sentencing guidelines. The government objected in part seeking a five-level enhancement using that same guideline, alleging that a pattern of activity occurred. A hearing was heard, a pattern of abuse had occurred. A hearing was conducted by the District Court, after which the District Court not only found that a pattern of abuse had occurred, justifying a five-level increase, but determined that Mr. Nicoson's conduct called into question the application of 2G 2.C. 1, which was a cross-reference to a more severe guideline. That more severe guideline increased the guideline range to 324 to 405 months. We attack the application of that cross-reference, Your Honors, based on the belief, on the argument, that the finding made by the District Court to support that application clearly erred in making that finding. The finding is based upon viewing three JPEG or computer images that were introduced at the hearing. Those images the District Court found allowed the District Court to conclude that Mr. Nicoson had received a live video broadcast of conduct of a minor engaged in sexually explicit conduct, and that he had actually caused that conduct to occur. We suggest to the Court that the evidence does not support the finding that there was a live video feed. Does this actually make a difference in this case, because an alternative basis for applying the cross-reference is if the defendant solicited a live performance by notice, and the record has, and this is an alternative grounds that was offered by the government and argued as an alternative basis to affirm, because the record supports that he was soliciting by posting a bunch of posts on these websites looking for a live feed. Solicitation, thank you, Your Honor. Solicitation requires a showing that there's a specific intent that you're going to complete the crime. The evidence is lacking on that issue, I believe. I understand that exhibit number two, for example, which was the Giga Tribe conversations, the chats, if you will, there are references I think on page two or four where there is a question about does anyone have kids on a webcam, or little children on a webcam. I'm not quoting it directly. I understand that that's out there, but I'm submitting that that is not enough to establish that the guideline, the application of the guideline should occur. Along with the court's question, if I might, the government relies on several cases, Dawn, United States v. Dawn, and United States v. Veazey. I think that those cases which did apply the cross-reference have to be looked at in reference to the particular charges. Dawn, for example, involved a possession of pornography, but the pornography was admittedly produced by Mr. Dawn. The question in Dawn was, since he had produced it in a foreign country, whether he could be held responsible for it. This court responded, yes, you can be because you produced it and you possessed it. You're being punished for the possession. The Veazey case, which I think will address the court's question to me of a moment ago, discusses a conviction of attempt enticement. So we have a crime where the person specifically intended to commit the offense. We have in Veazey, Mr. Veazey traveling to, I believe it was Decatur, Illinois, having had numerous conversations with what he believed to be a child, going with cameras, going with substances to aid in sexual acts which were described in their phone conversations. Therefore, I believe that the specific intent to commit the offense was adequately established. In this case, the evidence is lacking as far as whether the feed was a live feed. And in answer to the court's question, I believe that if there was a solicitation, it's just not sufficient to kick into the cross-reference referenced in 2G2C1. Well, but there was, you agree there was a solicitation in which the response was she's five years old and then he went on to say how much and he was able to view the... I don't believe, I'm not, I believe that there was a chat to that effect, Your Honor. Whether he was able to review and or paid for that viewing was not proven. There is no indication, for example, that PayPal was ever used by my client. There are no PayPal records is what I'm trying to say. If we are looking at exhibit number two, which is the gigatribe chats, the evidence would be if an image was sent in the last column, which I forget the title of that column as we speak, but that last column, the agent, Agent McDaniel, agreed that the evidence would show that no images were sent to my client. So I'm not, I cannot concede that an image was sent in response to this court's question if it's based on a gigatribe conversation. I'd like to reserve the balance of my time. Thank you. Mr. Love? May it please the court, AUSA Michael Love on behalf of the appellee. Thank you. In this case, the district court found that the defendant had engaged in conduct, which then led the district court to conclude that he had, in fact, on at least one occasion, caused a minor to engage in sexually explicit conduct for the purpose of a live transmission of that conduct. Defense argument is that, primarily, is that the court made an assumption. I guess that means that the court didn't, they don't see the court as having reasoned through it. The government's contention is that the court did, in fact, reason through this decision. The court went through several factors that led it to the point where it determined that three specific still images had been produced by the defendant using his Webcam while a live transmission was being displayed on his computer. The court noted that the quality of the images that were recorded by a Webcam, the defendant's Webcam, were poor. The court then noted that the Webcam had been used to record both still images and video images. So what was the defendant doing? He's sitting in front of a screen, a computer screen. Is that where the images were coming into? That's correct, Your Honor. And the FBI agent who testified at the hearing testified that... So he took pictures of that? I'm sorry, Your Honor? So the defendant took pictures of his computer screen? That's correct. Why did he do that rather than downloading them? It's not clear. What the court said, what the district court said, was that if the defendant had been able to download it he almost certainly would have done that. It couldn't be downloaded. Exactly. Would that have any different legal significance if he downloaded it rather than taking pictures of it? No, Your Honor, I don't believe it would. How about ease of discovery of it? I'm sorry? How about ease of discovery of the images? It certainly, for us, would have made the evidence clearer in terms of the discovery of it. If he downloaded it. Correct, Your Honor. Yeah. Yes. The real nub of the question here, and I think the defendant described it best in their brief when they said that the court had not, that the district court had not found what the origin of the three JPEG images, the still images, was. The court concluded, as a factual matter, that the origin of those was the defendant taking pictures of what was being displayed on his screen. I don't understand why this is evidence that he caused a minor to engage in sexually explicit conduct for the purpose of photographing it. He's receiving this live stream. The person on the other end is causing it to be sent, right? And causing the minor to do the things that this defendant is soliciting, so it's a clear case of solicitation. No, Your Honor. A clear case of solicitation, yes, but the solicitation causes it. It's the results in the causing. The defendant causes another person, an intermediary, to cause the minor to act. In other words, is this a case where he's dealing with the mother? I guess it's the mother here. Is that right? We're unaware of exactly who he was dealing with, Your Honor. An intermediary. The end result was this child performed these acts, which were transmitted. That's correct, Your Honor. Is this an aider-in-a-bedder theory of causation, or what exactly are you talking about here? No, Your Honor. The district court found that, based on case law that was presented by the government, that causing could occur through an intermediary. It addressed that in its order. The defendant has not raised that issue. Right, and my question is, what's the theory of that causation? The theory is that- He's obviously not causing it in a firsthand way. He's receiving it live stream. Well, through an agent is what you're saying, right? He uses an agent to get the performance, then he takes the picture. The case law uses the term intermediary, agent's the same thing. So that's the theory of causation. Yes, it is, Your Honor. Ultimately, then, the court did conclude that the three JPEG images, the stills, were being displayed on the defendant's computer from a live transmission, something that was occurring at the moment, as opposed to something that was prerecorded, watching a video that was streaming or something like that. The court relied on multiple factors in getting there, but once it got to the point where it had to make that decision, it relied primarily on the FBI agent's testimony, and in her opinion, the images appeared to have been from a live transmission. The live transmission was- We don't have a record of the live transmission. We just have the three images. I'm surprised, actually, why the live transmission wouldn't be downloadable. I mean, usually if you get a video onto your computer, you can download it, just like any other file. It's not in the record, Your Honor, so I hesitate, but in my experience, there are things that are displayed over the Internet which the recipient cannot record, so that would be one possibility. But the district court found that based on the defendant's interest in these live transmissions, that that meant, along with the other evidence that was involved, that what was displayed on his computer and what he took a picture of was, in fact, a live transmission. But this is, I guess, not in the evidence. With regard to perhaps the concern of disposal of the images, it's much easier if it's taken in a camera rather than left on the download. That's correct, Your Honor. It's not addressed. But that's not a part of the evidence. That's right, Your Honor. I would, before I pass the case, like to address one of the questions that Your Honor has brought up, and that is the alternative theory of harmless error. The government's primary argument of harmless error is that the defendant engaged in an attempt to cause a minor to engage in sexually explicit conduct for the purpose of a live transmission. That is different from the solicitation portion of the particular cross-reference. We chose the primary argument because there is case law, although it's unpublished, but it is cited in the brief case of Creighton, if I remember, C-R-A-Y-T-O-N, out of, I believe, the Tenth Circuit. And in that case, the court faced the issue of whether or not the... how to interpret that cross-reference, because it says solicit by notice or advertisement. And the question was, could there be just a solicitation, or was that modified by notice and advertisement? And the definition of notice and advertisement is,  so rather than argue the solicitation clause of that cross-reference, we argue that it's an attempt to cause the conduct that occurred. Okay, well, thank you very much, Mr. Lowe. So, Mr. Gaziano? What does that mean, solicit by notice or ad? I'm sorry, I didn't... What does that mean, solicit by notice or ad? In my opinion, Your Honor, that means that with the specific intent to... Well, you have to speak up. In my opinion, with the specific intent to have a minor engage in the conduct... No, no, I'm asking you, what does solicit by notice or ad mean? That is, what does notice or ad add to solicit? It requires... How can you solicit something without notification? I don't get it. Your Honor, if I... The guideline appears to me to require that the individual in question has to take certain steps more than soliciting the... Well, how can you solicit without notification? So, what is the additional step? I assume that's the successful communication of an offer to engage in this... or an offer seeking to engage in this kind of conduct to a person who is capable of carrying it out. I... Judge, I am not here supporting the argument that the... I'm just puzzled by what seems the redundancy of notice or ad because soliciting implies communication. You don't solicit something without a communication with the person you're soliciting. That's what puzzles me about it. I'm not disagreeing with the court on that. So, it's a mystery. I am not advocating the position that that subsection applies. As a matter of fact, the district court relied on the point that Mr. Nickerson caused certain activity to occur. The court asked some question about the disposal or the disposal of those items. I would call the court's attention to Appendix 17 in the government's brief where McDaniels, the FBI agent, testified how they could retrieve even deleted materials if that is where the court was going with regard to that. Well, I was speaking of a camera. The camera would be easier to take whatever is in the camera and get rid of it rather than what's on a computer. But it was saved within the computer. If it were saved within a computer. It was, I believe. It was a JPEG document which was saved. Your Honors. Well, I didn't understand it was saved. My concern is the breadth of this application of this cross-reference. What the government is actually saying is that anytime we establish that a person attempted to negotiate, solicited, with or without notice, that a much more severe guideline ought to be applied to people who possess and perhaps transport child pornography. The cases that are cited, Dawn and Beese, do not support that conclusion. Dawn involved the person who actually produced. Beese involved the person who actually intended to commit the acts with the child. I believe there should be some limitation on the application of the guideline. Thank you. Thank you very much. And were you appointed, Mr. Gaziano? Yes, I was. Well, we thank you for your efforts on behalf of your client. Of course, we thank Mr. Love as well. And the Court will be in recess.